STATE of Tennessee, Appellee,

v.

Billy CATE, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Nov. 6, 1987.

Permission to Appeal Denied by
Supreme Court March 7, 1988.

Stanley F. Roden, Jefferson City, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Robert Conley, Asst. Dist. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, Richard Scroggins, Asst. Dist. Atty. Gen., Jefferson City, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

The appellant, Billy Cate, has appealed as of right from his conviction for murder in the second degree and arson of personal property. Six issues are presented for our review including one which challenges the sufficiency of the convicting evidence.

The victim of this homicide was a young man named Jackie Proffit whose charred body was found in his burning automobile shortly after 9:00 p.m. on February 23, 1982. Medical testimony established that the cause of death was repeated blows to the head and that death occurred prior to the burning of the vehicle. The body was in a fetal position on the passenger side of the automobile with the legs and lower body in the floor area and the head and upper torso resting on the bottom of the seat.

Carpeting removed from under the body of the victim tested positive for gasoline. An arson investigator testified that in his opinion the fire originated inside the vehicle. He also described a burn pattern in the grass at the rear of the automobile and told of finding traces of coal oil in this area as well as in two plastic containers recovered from a nearby dumpster.

The State's proof shows that the appellant and victim spent most of the afternoon and early evening together.

Michael Tally testified that Jackie Proffit picked him up at his grandmother's house at approximately 12:30 p.m. They drove to the home of Billy Cate in the victim's car, a blue 1968 Dodge Coronet. Cate accompanied the two young men to Hatmakers where he purchased a case of beer. The three of them drove to a place on the river where they remained until approximately 4:00 p.m. when Tally was driven back to his home. Tally stated that during the time they were together there were no arguments and everybody was cutting up and having a good time. This witness also testified that Billy Cate was wearing a white T-shirt with the word "Gasser" written across the front. He did not notice any scratches on appellant's arms.

Vicky Light testified that on the date in question she saw the victim's car pass her house several times. She stated that both Billy Cate and Jackie Proffit were in the car with Cate driving when it "came in" at 8:00 p.m. When the car went back out at approximately 8:45 p.m., she could see that Cate was driving but did not see Proffit in the vehicle. A few minutes later she heard a police broadcast about a car burning near the dumpsters.

The State also called Vicky Eldridge Glenn who testified that on the day of the fire she saw Proffit's car twice. The first time was during the afternoon and on this occasion she stopped and talked to Billy Cate. She said that Mr. Proffit was somewhere around the car. When asked the question, "Did Mr. Cate appear to be in a good humor in regard to Mr. Proffit?" the witness responded, "Fine I guess for Billy, I don't know." This answer obviously took the attorney general by surprise. In a hearing out of the presence of the jury he informed the court of a prior statement in which this witness had stated that the appellant spoke of the victim in a derogatory manner and said, "One of these nights I'm going to lay his head wide open." In the earlier statement the witness reportedly said that when she saw the car the second time at between 6:30 and 7:00 p.m. the appellant was driving. Although generally acknowledging that she had made these earlier statements she was not asked and did not confirm their truthfulness with the result that this evidence may be considered for impeachment purposes only. The witness did testify in the presence of the jury that she guessed Billy Cate was sort of aggravated in relation to Jackie Proffit.

While being cross-examined by defense counsel Mrs. Glenn told of hearing threats and "fighting words" directed at the victim by Rocky Rimer. She also stated that Rim-

er and two other men left "going after" the victim's car and did not return until around 9:00 p.m.

The State presented testimony from two witnesses placing the appellant at the scene immediately before and during the burning of the car.

Charles Wallace identified the appellant as the person he saw, "Behind the car—hunkered down like he was drawing gas out." Approximately 15 or 20 minutes later he saw the fire at this location.

Jan McCubbins testified that as she drove by the dumpsters at about 8:55 p.m. she saw fire under the rear of the car and observed a person going up a bank near the burning vehicle. Although she could not see this person's face, she stated that the one person who came to her mind was Billy Cate based on his body build and distinctive hair. She testified that she had been seeing the appellant around the community for several years and had always recognized him by his hair. The man she saw going up the bank was wearing what appeared to be a light colored undershirt.

Sheriff Tom Eslinger testified that when he left the scene of the fire he went to the Cate home which was only a short distance away. He observed scratches on the arms and body of the appellant and noted the odor of gasoline on his clothing. The T-shirt with the word "Gasser" was never recovered. When asked during cross-examination about his shirt, the appellant stated that he had been wearing an elbow length white sweat shirt and had left it in the victim's car.

The appellant denied any involvement in the killing or arson. He testified that he had been out drinking with the victim until around 5:00 p.m. when he returned to his home. He said he slept from 6:00 p.m. until awakened by his father when the sheriff came to the house several hours later. In support of his alibi, the appellant called his father, mother and sister. Proof was also presented that on the morning of the murder the appellant cut wood with a gasoline powered chain saw.

The defense also called Johnny and Lloyd Phillips who testified that they saw two men in the victim's car at their store approximately 45 minutes before the fire. Johnny Phillips stated that he knew Billy Cate by sight and did not see him on the night in question. A few days after the fire when officers showed him a picture of the victim he told them that in his opinion the victim was not the person he saw at the store.

This is substantially the evidence heard during the trial. Appellant argues that with no witnesses to the actual murder the State sought by proving his disposal of the body to prove that he committed the murder. He then points to various conflicts and contradictions in the identifying testimony and urges that taking all of the State's evidence with its contradictions a rational trier of fact could not find beyond a reasonable doubt that he was guilty of murder in the second degree.

The defense of alibi and the question of identification present issues of fact determinable by the jury as the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. See *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn.Crim.App.1982).

By its verdict the jury obviously rejected the alibi defense and accepted the State's proof identifying the appellant as the person who set fire to and burned the vehicle containing the brutally beaten body of the victim. A guilty verdict by the jury approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973).

■ An inference of guilt may be drawn from the concealment or destruction of the body of the deceased. 1 Wharton's Criminal Evidence (§§ 142, 207). While that inference is by no means strong enough of itself to warrant conviction, yet it may become one of a series of circumstances from which guilt may be logically inferred. *Cagle v. State*, 507 S.W.2d 121, 129 (Tenn. Crim.App.1973).

■ Additionally, the jury had the testimony of Vicky Light that both Cate and Proffit were in the car when it passed her house at 8:00 p.m. but she could only see Cate when the vehicle went back out at 8:45 p.m. The jury could well have determined that the killing occurred during this interim and the appellant received the scratches on his arms and body during the fatal encounter.

Although no clear evidence of motive is present there is proof from which the jury could find that the earlier pleasant relationship had deteriorated, at least on the part of the appellant, before the killing. Without question the repeated blows to the head of the victim, who was shown by the proof to be a much smaller man and very intoxicated, clearly supports a finding that the killing was malicious.

Even where, as here, the conviction is based entirely on circumstantial evidence the burden rests with the appellant to demonstrate that the evidence preponderates against the verdict. *State v. Brown,* 551 S.W.2d 329, 330 (Tenn.1977). This he has failed to do.

In reviewing a case based upon circumstantial evidence, the same rule is applied as is applied in weighing a case based upon direct evidence. *State v. Berry,* 598 S.W. 2d 828 (Tenn.Crim.App.1980). That is, we must determine if the evidence is such that any rational trier of fact could find guilt beyond a reasonable doubt. Rule 13(e) T.R.A.P. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence in this case supports the finding by the jury that the appellant killed the deceased and that the killing was murder in the second degree.

In his next issue the appellant says the trial court erred by allowing the State to cross examine its own witness, Vickie Eldridge Glenn, as a hostile witness.

■ In our earlier discussion of the evidence we observed that the State was obviously surprised by the testimony of this witness. Her knowledge of the threat made by the appellant shortly before the killing was clearly material and the State was properly permitted to attempt to develop this evidence by the use of leading questions. *King v. State,* 187 Tenn. 431, 215 S.W.2d 813 (1948); *Floyd v. State,* 596 S.W.2d 836 (Tenn.Crim.App.1979).

Error is charged in the refusal of the trial court to allow defense witness, Eric Dockery, to be questioned about an *alleged* inconsistent statement of Jan McCubbins, a witness called by the State.

We say *alleged* because the record does not reflect to what Dockery would have testified. One can infer from statements by counsel and the court when the State's objection was sustained that the witness was expected to testify that Ms. McCubbins had made a prior statement in the presence of fellow employees that she did not see anyone around the burning car.

During her direct testimony, Jan McCubbins testified that she saw a person fitting the description of Billy Cate near the burning car. On cross-examination the witness admitted that in her first statement to the police she told them she didn't see anyone at the car. She admitted that at another time she might have told fellow employees that she saw no one at the car. She said Eric Dockery could have been present at the discussion and stated that she was not denying saying something in front of him. When pressed by defense counsel for a denial of such a statement the witness responded, "I say I don't remember." At another point the record reflects the following question and answer.

Q. The co-workers at the Cress farm, that is where it happened, wasn't it?

A. It could have been. I'm not really sure but at first I did say that I didn't see nobody.

Appellant cites *Reagan v. Mabry,* 67 Tenn. 168 (1874) as authority for the proposition that the prior inconsistent statement is admissible where the witness neither admits nor denies making the statement but claims that she does not remember.

■ Under this authority the trial judge cut the line too thin in ruling, "She didn't deny, so, there's nothing to impeach." However, we do not feel that reversible

error was committed. We think the cross-examination of this witness clearly showed this jury that the witness had made prior inconsistent statements on more than one occasion. She admitted as much and offered explanations for the apparent contradictions. The general rule excludes extrinsic proof under these circumstances. See *Paine's Tennessee Law of Evidence* § 193, p. 218.

In his next issue the appellant says the trial court erred by denying admission of photographs offered by the appellant.

We are unable to examine the subject photographs because they are not presented in the record. However, in the testimony of Thomas R. Cate, Sr., we find them described as follows:

(1) This is a picture of the house that I lived in on Baker Road.

(2) This is Baker Road and it goes from the house. Okay, this is the side view of the house and this is my bedroom here.

(3) And this is the porch and it had a L porch on it and this is the front part of the house and this is the lower side of the house toward the garden.

(4) This is the upper side of the house, the—

When the trial judge questioned the materiality of this evidence defense counsel explained that he wanted to demonstrate the structure of the house. He argued further that it was material to show that this was an old house with creaky floors. The witness was then allowed to testify that the house had "creaky" floors and a tin roof.

The court then refused to allow the introduction of the photographs as a collective exhibit ruling that they were immaterial. The appellant says these photographs were essential to prove that if the appellant had left his house he would have had to walk across a tin roof. However, as the State correctly points out there was never any proof offered or suggestion made that the appellant left the house in such a manner.

Discussing the long established rule that "the admissibility of photographs is a mat-ter to be determined by the trial court in the exercise of its sound discretion" this Court in *Cagle v. State*, 507 S.W.2d 121 (Tenn.Crim.App.1973), quoted at length from 29 Am.Jur. Evidence §§ 786 and 787. We find the following portion of that quotation to be particularly applicable here.

> It is always essential to the right to introduce a photograph in evidence that it have a relevant and material bearing upon some matter in controversy at the trial, and the party offering such evidence should establish its relevancy to the issue before the jury. A photograph which is entirely irrelevant and immaterial to any issue in the cause, and which is of such a character as to divert the minds of the jury to improper or irrelevant considerations or to prejudice the jury, should be excluded from evidence.

We find no abuse of discretion in denying admission of the described photographs.

Although these crimes were committed on February 23, 1982, the trial was conducted in accordance with the provisions of the Sentencing Reform Act of 1982 which, of course, is applicable only to those crimes committed on or after July 1, 1982.

There was no objection made to this procedure during the trial or sentencing hearing. There is no indication that the issue was raised or even discussed prior to the motion for a new trial.

When this error in procedure was called to his attention the trial judge properly granted a new trial as to punishment and a new jury was subsequently selected for trial of this issue.

The appellant says he should have received a full new trial (guilt and punishment) because he was denied due process in that he expected a sentencing by the court and therefore did not introduce proof as to factors that would weigh in sentencing.

There are no constitutional or statutory prohibitions in this State against retrial on the issue of punishment alone. In *Hunter v. State*, 496 S.W.2d 900 (Tenn. 1972) the Supreme Court said:

The statutory right of an accused convicted of rape to have punishment assessed by his peers does not carry with it the right to have the punishment fixed by the same jury that determined guilt or innocence. In Tennessee there is no statutory prohibition against bifurcated trials. Likewise the constitutional validity of this procedure is beyond question.

Furthermore, the trial court informed defense counsel that he could present "whatever mitigates" during the sentencing hearing before the jury. The record reflects that the defense elected not to call any witnesses. There was no denial of due process.

Finally, we see no error in the admission during the sentencing hearing of three small color photographs of the burned automobile. Two of the photographs were of the outside of the car and one was a view of the inside of the burned vehicle. The body of the victim is not depicted in any of the photographs. We agree with the trial judge that these photographs of the burned vehicle were not such as to inflame, excite or prejudice. They were admissible under *State v. Banks*, 564 S.W.2d 947 (Tenn.1978).

The judgments are affirmed.

DUNCAN and BYERS, JJ., concur.