# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## SEPTEMBER 1997 SESSION

FILED

September 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9610-CR-00352 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. JAMES C. BEASLEY, JR., |
| CEDRIC DAVIS, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (First Degree Murder) |

**FOR THE APPELLANT:**

**W. MARK WARD (on appeal)**
147 Jefferson, Suite 900
Memphis, TN 38103

**WILBUR C. RULEMAN, JR. (at trial)**
251 Adams Avenue
Memphis, TN 38103

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**KAREN M. YACUZZO**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**JAMES M. LAMMEY**
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103

OPINION FILED: _____

AFFIRMED

**JOE G. RILEY,**
**JUDGE**

The defendant, Cedric Davis, was convicted by a Shelby County jury of murder in the first degree. He was sentenced to life in prison. On appeal, he challenges the sufficiency of the convicting evidence by arguing that (1) the state did not establish his identity beyond a reasonable doubt, and (2) the state failed to establish beyond a reasonable doubt that the homicide was intentional, premeditated and deliberate. After a thorough review of the record, we find that the evidence is sufficient to sustain his conviction. The judgment of the trial court is affirmed.

**FACTS**

The state's proof at trial showed that at approximately 5:30 p.m. on April 30, 1993, defendant, Kedrick Crutcher ("Pokey") and Kavious Jenkins ("Teddy Bear") were traveling in an automobile looking for Phillip Thomas. Both defendant and Jenkins were carrying weapons. They asked a group of people if Phillip Thomas lived in the home at 219 Silver Maple. One person in the group, Marcel Pratcher, identified the defendant as the person who was armed with what appeared to be a TECH-9 weapon and who stated, "tell Phillip I'm going to kill his momma and then he's going to be next."

Defendant, Crutcher and Jenkins pulled into the driveway at 219 Silver Maple. Two of the men jumped out of the car and began shooting. Laura Warren, Phillip Thomas' grandmother, was shutting the front door when she was hit by one of the bullets. She died of a gunshot wound to the chest. The victim's granddaughter and another person in the neighborhood identified the defendant as one of the gunmen.

Defendant offered an alibi defense at trial. His wife, Teresa, testified that defendant was with her at the Wilson Inn on American Way at the time of the incident. She presented a receipt from the hotel which showed a check-in time of

5:54 p.m. on the day of the shooting. Furthermore, Yolanda Aikens testified that defendant hit her car as she was leaving the hotel at approximately 5:30 p.m. on April 30.

Jenkins also testified on behalf of the defense. He claimed that defendant was not involved in the incident and insisted the shooting was carried out by Crutcher, himself and a man named "Butter."

On rebuttal, the state presented a letter written to Crutcher. In the letter, the writer asks Crutcher to assist, along with "Teddy Bear," in a plan to blame the shooting on a man named "Butter." A handwriting expert testified that the writing in the letter was consistent with that of the defendant's. Additionally, Cindy Mahoney, an employee of Wilson Inn, testified that there was no record of defendant's staying at that hotel on April 30.

Defendant testified on surrebuttal. He denied writing the letter to Crutcher. The state then asked defendant about ten (10) prior felony convictions for impeachment purposes.

The jury returned a verdict of guilty of murder in the first degree. Defendant was sentenced to life imprisonment. From this conviction, defendant brings this appeal.

## SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

In determining the sufficiency of the evidence, this court does not reweigh or re-evaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest

3

legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d at 476.

## A. Identity of the Defendant

Defendant asserts that the state failed to prove his identity beyond a reasonable doubt. Specifically, he claims that there is insufficient evidence to justify a finding that he was one of the assailants involved in the shooting of Warren. He bases this contention on the fact that several witnesses testified that he was not present during the shooting. As a result, he argues that the evidence is insufficient to support a finding of guilt beyond a reasonable doubt.

"The defense of alibi and the question of identification present issues of fact determinable by the jury as the exclusive judges of the credibility of the witnesses and the weight to be given their testimony." State v. Cate, 746 S.W.2d 727, 729 (Tenn. Crim. App. 1987); see also State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982). The state presented two eyewitnesses to the shooting who testified that defendant was one of the men who fired his weapon at the house and its occupants. Although other witnesses testified that the defendant was not present during the shooting, questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. State v. Tuttle, 914 S.W.2d at 932. We find that there is sufficient evidence from which a reasonable trier of fact could conclude that

4

defendant was involved in the shooting. This issue is without merit.

### B. Intentional, Premeditated and Deliberate

Defendant also contends that the state failed to prove that the homicide was intentional, premeditated and deliberate. He argues that because the state did not prove these elements, he is merely guilty of second degree murder. Therefore, he claims that the evidence is insufficient to support a conviction for murder in the first degree.

The law is well-established in Tennessee that all homicides are presumed to be murder in the second degree. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992); State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). The state bears the burden to prove premeditation and deliberation in order to elevate the offense to murder in the first degree. Id.

At the time the offense was committed, first degree murder was defined as the "intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1)(1991).[1] A deliberate act is one "performed with a cool purpose," whereas a premeditated act is one "done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-201(b)(1991). As our Supreme Court noted in State v. West, "[t]he element of premeditation requires a previously formed design or intent to kill. Deliberation, on the other hand, requires that the killing be done with a cool purpose -- in other words, that the killer be free from the passions of the moment." 844 S.W.2d at 147 (citations omitted).

The elements of premeditation and deliberation may be established by the circumstances surrounding the offense. State v. Bordis, 905 S.W.2d 214, 221 (Tenn. Crim. App. 1995); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). Indeed, in State v. Brown, *supra*, our Supreme Court recognized:

> there may be legitimate first-degree murder cases in which there is no direct evidence of the perpetrator's state of mind. Since that state of mind is crucial to the establishment of the elements of the offense, the cases have long recognized that the necessary elements of

---

[1] As a result of the 1995 amendment to Tenn. Code Ann. § 39-13-202(a)(1), "deliberate" is no longer a required element of first degree murder. *See* 1995 Public Acts, Chapter 460. Since the instant offense was committed prior to this amendment, "deliberate" was a required element of first degree murder.

first-degree murder may be shown by circumstantial evidence. Relevant circumstances recognized by other courts around the country have included the fact "that a deadly weapon was used upon an unarmed victim; that the homicidal act was part of a conspiracy to kill persons of a particular class; that the killing was particularly cruel; that weapons with which to commit the homicide were procured; that the defendant made declarations of his intent to kill the victim; or that preparations were made before the homicide for concealment of the crime, as by the digging of a grave."

836 S.W.2d at 541-42 (quoting C. Torcia, *Wharton's Criminal Law* § 140 (14th ed. 1979)(emphasis added).

In the case *sub judice*, we find that the state provided sufficient proof that the defendant acted with premeditation, deliberation and the intent to kill. Defendant, along with Crutcher and Jenkins, armed themselves with weapons and proceeded to the home where Thomas lived. They asked a group of people if Thomas lived in that home. Defendant stated that he intended to kill Thomas and his mother. After they drove into the driveway of the home, two of the men fired numerous shots. Defendant was identified by eyewitnesses as one of the gunmen. Thirteen (13) 9mm shell casings were found in the immediate area of the shooting. Although Jenkins testified that they did not intend to hurt anyone,[2] a rational trier of fact could choose to disbelieve this testimony. Furthermore, the fact that Warren was killed instead of Thomas or his mother makes the defendant no less culpable. *See* State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995); State v. Bryant Dewayne Millen, C.C.A. No. 02C01-9602-CR-00049 (Tenn. Crim. App. filed March 7, 1997, at Jackson). This issue has no merit.

## CONCLUSION

We find that there is sufficient evidence from which a rational trier of fact could determine that the defendant was one of the perpetrators involved in the

---

[2] Jenkins testified that "Butter" was the dominant perpetrator in the shooting and that the defendant was not with them at the time. In his testimony he stated that they were "trying to shoot the house up. We wasn't [sic] trying to shoot no individual."

shooting of Warren.  Additionally, we find sufficient evidence that the homicide was intentional, premeditated and deliberate.  Accordingly, we affirm the judgment of the trial court.

7

_____
                          **JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOE B. JONES, PRESIDING JUDGE**

_____
**DAVID H. WELLES, JUDGE**