IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 19, 2000 Session

## STATE OF TENNESSEE v. RODERICK JOHNSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-A-87     J. Randall Wyatt, Jr. Judge**

_____

**No. M1999-00605-CCA-R3-CD - Filed November 17, 2000**

_____

A Davidson County jury convicted defendant of second degree murder. In this appeal as a matter of right, defendant challenges only the sufficiency of the evidence upon which the jury based his conviction. Our review of the record reflects sufficient evidence to support the jury's finding. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Lionel R. Barrett, Jr. (at trial and on appeal) and Dwight E. Scott (on appeal), Nashville, Tennessee, for the appellant, Roderick Johnson.

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Dan Hamm and Ana Escobar, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Following a joint trial, a Davidson County jury convicted defendant of second degree murder and his brother of first degree murder. In this appeal as a matter of right, defendant challenges the sufficiency of the evidence. We have reviewed the evidence and find it sufficient. Accordingly, we affirm the judgment of the trial court.

## FACTS

On October 24, 1997, between 8:30 and 9:00 p.m., Derrick and Amanda Barrett returned home from an evening of shopping. They passed a vehicle parked in the apartment complex's parking lot with its windows rolled down, and they noticed an African-American infant restrained in an infant seat in the vehicle's back seat. After approximately 30 minutes passed, they grew concerned for the infant's well-being, and Derrick Barrett wrote down the vehicle's license plate number. Amanda Barrett phoned 911 to report the abandoned child. Subsequent to Amanda Barrett's phone call to 911, Derrick Barrett witnessed two African-American males run out of an apartment, get into the vehicle, and drive away. The police checked the license number that Derrick Barrett copied and determined defendant to be the owner of the vehicle.

While defendant's vehicle was in the parking lot, numerous witnesses testified as to a commotion occurring in William Edwin Binkley's, hereinafter "victim," second floor apartment. Witnesses reported hearing the sounds of threats, pleading, and fighting for approximately an hour. One witness heard someone yell, "where's my money?" Another witness heard someone say, "where's the dope?" Although several residents phoned 911 throughout the ordeal, they were told that officers were not available. Accordingly, a resident phoned the victim's mother, Francis Hampton, and informed her that her son was in peril. Hampton arrived within 10 minutes of the phone call, knocked on the victim's locked door, and demanded entry. She walked back down the steps to meet the apartment manager to procure a key to the victim's door. Suddenly, two African-American males exited the victim's apartment, walked directly by her on the steps, and ran to their vehicle. At trial, Hampton identified defendant's brother, the co-defendant, but was unable to identify the other male because he wore a hat down over his face.

Hampton entered the victim's apartment and found him lying on the floor in a pool of his own blood. He was transported to Vanderbilt Hospital by emergency personnel and died three days later. It was subsequently determined that his death resulted from being beaten and stabbed 41 times.

Following the victim's death, Hampton entered the victim's apartment to clean and remove personal belongings. She discovered, under the victim's coffee table, a Phillips head screwdriver that was stained with a substance which appeared to be blood. She gave it to police, and DNA testing determined it to be the victim's blood.

An expert witness, Dr. John Gerber, opined that it was more likely that two weapons were used because of the types of injuries sustained. Gerber testified that there were deep stab wounds and more shallow incised wounds.

The police obtained defendant's consent to search his vehicle and seized a blood sample from the seat of defendant's vehicle. It was subsequently shown by DNA testing to be the victim's blood. In addition, defendant had a 14-month-old stepdaughter that was with him on the night of the victim's murder, and she traveled in an infant seat located in his vehicle's back seat. Furthermore,

several witnesses identified defendant's brother, the co-defendant, as being at the scene. Testimony also established the defendant frequently provided the co-defendant with transportation because the co-defendant had neither a functioning vehicle nor a driver's license.

Rochelle Johnson, the wife of the co-defendant, testified that her husband did not have an automobile and often rode with the defendant.

Robert Johnson, the co-defendant, testified that he was acquainted with the victim and had previously used drugs with him. He testified that he loaned the victim money on several prior occasions, but did not expect to be repaid. Although the co-defendant conceded that he had been to the victim's residence the night before the incident, he denied being at the residence on the evening of the murder.

Defendant testified that he had no involvement in the murder and was at his sister's residence during the time in question. His alibi was corroborated by the testimony of his sister. He insisted that his car was at his sister's residence and had no explanation for the testimony of the witnesses who identified his car in the victim's parking lot. He conceded he often transported his stepdaughter in the infant seat in the back seat of his car.

Based upon this evidence, the jury convicted defendant of second degree murder and his brother of first degree murder.


## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

Defendant contends that the evidence is insufficient to sustain the jury's verdict of second degree murder. We respectfully disagree.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S .Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). We do not reweigh or reevaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). It is the defendant's burden to show this court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900

(Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." *Id.* (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

While following the above guidelines, this court must remember that the jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958); *see also* Gregory, 862 S.W.2d at 577; State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985); Pruitt, 460 S.W.2d at 391.

### B. Analysis

Second degree murder is defined as a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). A person acts "knowingly" when "the person is aware that the conduct is reasonably certain to cause the result...." Tenn. Code Ann. § 39-11-106(a)(20). In this case, the state failed to carry its burden of proving premeditation for first degree murder, but the jury found sufficient proof to convict defendant of second degree murder. The degree of homicide is generally a question for the jury's determination. State v. Shelton, 854 S.W.2d 116, 119 (Tenn. Crim. App. 1992).

Defendant's defense was alibi. He offered testimony of his sister, Tammy Chatman. Chatman testified that defendant and his stepdaughter visited her, her boyfriend, and her two young sons on the night of the victim's murder. She testified that he was present from approximately 6:00 p.m. until midnight, which would have made it impossible for defendant to have taken part in the victim's murder. Chatman's boyfriend did not testify at trial.

"The defense of alibi and the question of identification present issues of fact determinable by the jury as the exclusive judges of the credibility of the witnesses and the weight to be given their testimony." State v. Cate, 746 S.W.2d 727, 729 (Tenn. Crim. App. 1987); *see also* State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

While two eyewitnesses placed co-defendant at the scene and no one positively identified defendant, there was sufficient circumstantial evidence to sustain the conviction. Although defendant's sister testified that the defendant was at her home during the stabbing, the jury could disbelieve her testimony in light of the other evidence presented at trial. The other evidence presented at trial established that the victim's blood was found in defendant's vehicle; defendant's brother, who frequently rode with defendant, was positively identified at the scene; defendant met

4

the general description of the other assailant seen leaving the victim's apartment; two weapons were more than likely used; defendant's brother was owed money by the victim; and a demand for money was made during the struggle. In spite of defendant's insistence that his car was not at the scene of the murder, his car with his license plate was clearly identified by witnesses as being in the parking lot. Additionally, defendant testified to having his 14-month-old stepdaughter in his custody on the night of the stabbing, and an African-American infant was seen in the infant seat in the back seat of defendant's vehicle. Defendant testified that he transported his stepdaughter in such a manner. Accordingly, we find that there was sufficient circumstantial evidence from which a reasonable trier of fact could conclude that defendant was guilty of second degree murder.

## CONCLUSION

Based upon the foregoing, we hold that there was sufficient evidence to sustain defendant's conviction for second degree murder. Thus, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE