# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs November 20, 2002

## STATE OF TENNESSEE v. TIMOTHY MAURICE REYNOLDS

**Direct Appeal from the Circuit Court for Giles County**
**No. 8369      Jim T. Hamilton, Judge**

---

**No. M2001-00900-CCA-R3-CD - Filed December 6, 2002**

---

A Giles County jury convicted the defendant, Timothy Maurice Reynolds, of aggravated robbery, and the trial court sentenced the defendant to twenty years as a Range II multiple offender. On direct appeal, the defendant raises the following issues: (1) whether the evidence was sufficient to support the conviction for aggravated robbery; (2) whether the trial court erred in prohibiting defense counsel, during cross-examination and closing arguments, from referring to the United States Attorney General's comments on eyewitness identification; and (3) whether the trial court erred in finding the defendant to be a Range II multiple offender. We affirm the conviction; however, because essential exhibits relating to sentencing are missing from the record without fault of the parties, we remand for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Conviction of the Circuit Court Affirmed;**
**Remanded for Resentencing**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal); Claudia S. Jack, District Public Defender; and Robert H. Stovall, Jr., Assistant District Public Defender, for the appellant, Timothy Maurice Reynolds.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Mike Bottoms, District Attorney General; and Richard H. Dunavant and Patrick S. Butler, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On August 31, 1998, a Giles County jury convicted the defendant of aggravated robbery, and the trial court imposed a Range I sentence of twelve years. On direct appeal, this court reversed the conviction based upon a violation of the defendant's right to counsel and failure to charge the jury on lesser-included offenses, and the defendant was granted a new trial. *See* State v. Timothy M. Reynolds, No. M1998-00059-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 15, at *1 (Tenn. Crim. App. Jan. 7, 2000, at Nashville).

During the retrial, the victim, Howard Edward Roberts, testified that on June 22, 1997, at approximately 9:00 p.m., he stopped to get fuel at Scot Market, a convenience store in Pulaski, Tennessee. Several young people were in the parking lot. When Roberts got out of his vehicle and began to pump fuel, he saw the defendant leave the area where the young people were standing and approach the far side of his vehicle. The defendant approached Roberts and offered to wash his windshield. Roberts declined his offer, and the defendant walked away.

Roberts testified the defendant then approached his vehicle from the opposite side and looked inside the vehicle. The defendant approached Roberts and said, "Hey man, I need some money." Roberts ignored the defendant, and the defendant started walking toward Roberts and said, "Hand over your wallet or I'm going to kill you." The defendant then exposed an object in his pocket, which Roberts thought was the handle of a pistol. Roberts described the object as metallic with a plastic decor similar to those found on .38 specials. Roberts stated he had previously seen handles on both pistols and knives resembling the object in the defendant's pocket. Roberts gave the defendant his wallet, and the defendant rejoined the group of young people. Roberts went into the store and called the police. At trial, Roberts identified the defendant as the perpetrator of the offense.

Roberts testified the wallet contained a $650 check, a $200 check, a $100 check, and $700 to $800 in cash. The wallet also contained a credit card, which had $2,400 charged against it a few days after Roberts reported it stolen.

Officer Kyle Helton of the Pulaski Police Department testified he took Roberts to the police station where Roberts reviewed mug books. Even though one of the books contained a photograph of the defendant, Roberts was unable to make an identification.

Two to three days after the incident, Officer Helton and Investigator John Dickey constructed another line-up using digital photographs from the Giles County Sheriff's Department. The line-up consisted of photographs of eight individuals. Both Officer Helton and Investigator Dickey testified Roberts immediately identified the defendant.

Defense witness Donna Willingham stated she was with the defendant on the night of June 22, 1997, at the Victoria Apartments, approximately two blocks away from Scot Market. Willingham conceded the defendant may have left the apartments around 9:00 p.m. or 10:00 p.m.

Shelia Smith and Jennifer Reynolds testified they saw the defendant at the Victoria Apartments at approximately 7:00 p.m. The defendant drank for several hours and left with them around 9:30 p.m. Smith, Reynolds, and the defendant then went to Lisa Daly's house because the defendant stated he needed to borrow money.

Lisa Daly testified that at around 10:00 p.m., the defendant came to her house, which was located three to four blocks from Scot Market. When the defendant asked to borrow money, Daly gave him $10, and he left after fifteen to twenty minutes. Reynolds testified that when they left Daly's house, they returned to the Victoria Apartments; she stated the defendant never left her sight between 7:30 p.m. and midnight.

The jury convicted the defendant of aggravated robbery. The trial court sentenced the defendant to twenty years in the Tennessee Department of Correction as a Range II multiple offender. The trial court also ordered the sentence to run consecutively to an unrelated federal sentence. This appeal ensued.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to support his conviction for aggravated robbery. We disagree.

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.*; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

Aggravated robbery, as applicable to the case at bar, is defined as robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. . . ." Tenn. Code Ann. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a).

The defendant contends there was no evidence that the perpetrator used a gun or any other weapon to accomplish the robbery. However, the actual use of a deadly weapon is not a required element of aggravated robbery. *See id.* § 39-13-402(a)(1). Rather, a defendant may be convicted of aggravated robbery when he or she accomplishes a robbery by displaying an object in a fashion that "lead[s] the victim to reasonably believe it to be a deadly weapon." *Id.*

Roberts testified the defendant approached him and exposed an object in his pocket, which Roberts believed to be the handle of a pistol. The defendant then demanded his wallet and threatened to kill him. Upon seeing the object and hearing the defendant's threats, Roberts gave him the wallet.

Roberts further testified that on prior occasions, he had observed handles on pistols and knives which resembled the object in the defendant's pocket. He stated the object was metallic with a plastic decor similar to a .38 special. Roberts could have reasonably believed the object was a deadly weapon. Whether the object in the defendant's pocket was, in fact, a deadly weapon is not dispositive of the issue.

We conclude that it was within the jury's prerogative to reject defendant's alibi defense. *See* State v. Cate, 746 S.W.2d 727, 729 (Tenn. Crim. App. 1987) (noting the defense of alibi and the question of identification are determinable by the jury as the exclusive judges of the credibility of the witnesses). Accordingly, we conclude the evidence was sufficient to support the aggravated robbery conviction.

## EVIDENCE OF IDENTIFICATION

During the cross-examination of Investigator John Dickey of the Pulaski Police Department, defense counsel questioned him regarding the second lineup in which Roberts identified the defendant. Defense counsel attempted to question Investigator Dickey regarding the standards on photographic lineup identification procedures promulgated by the United States Department of Justice. Specifically, defense counsel requested the trial court permit him to read the introduction by then United States Attorney General Janet Reno during both cross-examination and closing arguments.

In her introduction, Attorney General Reno stated the following:

> Recent cases in which DNA evidence has been used to exonerate individuals convicted primarily on the basis of eyewitness testimony have shown us that eyewitness evidence is not infallible. Even the most honest and objective people can make mistakes in recalling and interpreting a witnessed event. It is the nature of human memory. This issue has been at the heart of a growing body of research in the field of eyewitness identification in the past decade.

The trial court denied defense counsel's request, stating that defense counsel could argue eyewitness identification is not infallible, but could not quote Attorney General Reno. The defendant contends the trial court erred in denying the request. We disagree.

The propriety, scope, manner and control of the examination of witnesses is within the sound discretion of the trial court. State v. Humphreys, 70 S.W.3d 752, 766-67 (Tenn. Crim. App. 2001). Absent an abuse of discretion, we will not interfere with such rulings. State v. Harris, 839 S.W.2d 54, 72 (Tenn. 1992).

Expert testimony regarding the reliability of eyewitness testimony, which does not specifically address the testimony of the witness at issue, is inadmissible *per se* under Tennessee Rule of Evidence 702 because this type of expert testimony does not substantially assist the trier of fact. State v. Coley, 32 S.W.3d 831, 838 (Tenn. 2000); Tenn. R. Evid. 702. Expert testimony

regarding eyewitness identification "'solicits the danger of undue prejudice or confusing the issues or misleading the jury. . . .'" *Id.* at 835 (quoting State v. Ballard, 855 S.W.2d 557, 561 (Tenn. 1993)).

In the case at bar, defense counsel did not attempt to introduce an expert witness to testify to the unreliability of eyewitness testimony. Instead, defense counsel attempted to introduce a general and unparticularized statement made by then Attorney General Reno concerning the lack of reliability of eyewitness identifications. Even if the statement qualifies as an exception to the hearsay rule, this statement is not specific to either Roberts' testimony regarding his identification of the defendant or Investigator Dickey's testimony regarding the particular procedures employed in constructing the second photographic lineup. Like expert testimony on eyewitness identification, this statement solicits the danger of misleading the jury, who must make its own determination of credibility. *See* Coley, 32 S.W.3d at 835.

The trial court permitted defense counsel to argue in his closing that eyewitness identification is not infallible. In addition, defense counsel questioned Investigator Dickey extensively during cross-examination concerning the flaws in the second photographic lineup. We conclude that the trial court did not err in denying defense counsel's request to read Attorney General Reno's statement to the jury.

## SENTENCING

The defendant contends the trial court erred in finding him to be a Range II multiple offender. As applicable to the case at bar, a "multiple offender" is a defendant who has received "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes. . . ." Tenn. Code Ann. § 40-35-106(a)(1). The trial court must find the defendant to be a multiple offender beyond a reasonable doubt. *Id.* at (c).

The defendant was convicted of aggravated robbery, a Class B felony. *See* Tenn. Code Ann. § 39-13-402(b). Therefore, in order to be sentenced as a multiple offender, the defendant must have at least two prior felony convictions falling within the range of Classes A through D. *See* Tenn. Code Ann. § 40-35-106(a)(1).

In its sentencing order, the trial court sentenced the defendant to twenty years for aggravated robbery as a Range II multiple offender. However, the trial court failed to list the felonies upon which its decision was based. In order to allow meaningful appellate review, the trial court must place its reasons for arriving at the final sentencing decision on the record. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The presentence report lists four felony convictions, while the parties addressed five felony convictions during the sentencing hearing. Although certified copies of the convictions were admitted, they are missing from the appellate record. Defense counsel averred in an affidavit that his efforts to procure the copies were unsuccessful because the state's only copies were introduced at the hearing. We will address each felony conviction based upon the record presented to us.

The first felony conviction listed in the presentence report is a federal conviction for bank robbery by force or violence, in which the defendant was convicted on January 16, 1998, and sentenced to 80 months of incarceration. For purposes of determining multiple offender status, a "prior conviction" is defined as a "conviction that has been adjudicated prior to the commission of the more recent offense for which sentence is to be imposed." State v. Blouvett, 904 S.W.2d 111, 113 (Tenn. 1995); *see* Tenn. Code Ann. § 40-35-106(b)(1). The offense at issue, aggravated robbery, occurred on June 22, 1997, prior to the bank robbery conviction. Therefore, the conviction for bank robbery does not qualify as a "prior conviction" and may not be used in determining the defendant's status as a multiple offender.

The defendant was also convicted of burglary on August 22, 1990, in Arizona and sentenced to eight years of incarceration. During the sentencing hearing, the defendant conceded that the burglary conviction qualified as a prior felony conviction, which could be used in determining multiple offender status.

The third felony conviction listed in the presentence report is "attempt to commit felony," in which the defendant was convicted on July 1, 1990, in Arizona and sentenced to three years probation. During the sentencing hearing, the prosecutor stated the defendant was convicted of attempted third degree burglary and attempted possession of narcotic drugs. Certified copies of these convictions are missing from the record. Based on the record before us, we are unable to conclude these convictions qualify as Class D or higher felonies.

The last felony conviction listed in the presentence report is assault with a deadly weapon. The defendant pled *nolo contentre* on November 8, 1988, in California and received a sentence of 90 days of incarceration and 24 months probation. The presentence report also states that the defendant was convicted under the alias "Keith Bryant." The certified copy of the conviction is missing from the record.

During the sentencing hearing, Linda Lipham, who prepared the defendant's presentence report, testified she could not recall where she found the alias "Keith Bryant." She stated she could not remember whether the defendant provided her with the name, but that she could have gotten it from either clerks' offices, probation reports, or the National Crime Information Computer (NCIC).

During the sentencing hearing, the defendant testified he did not go by the name "Keith Bryant" while he was living in California. He further denied telling Lipham that his alias was Keith Bryant.

In the sentencing order, the trial court found that the defendant and Keith Bryant were the same person. However, the trial court failed to state the factual basis for its finding. Because the exhibits are missing, we are unable to conclude whether or not the felony conviction for assault with a deadly weapon may be used in determining multiple offender status. If we had the missing exhibits, we might be able to resolve the issue by comparing social security numbers or other information.

In light of these circumstances, we are in a quandary as to the disposition of this issue. Although the appellant has the responsibility of providing this court with an adequate record, *see* State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999), we are unable to fault him for the missing exhibits. Likewise, we are unable to fault the state. Accordingly, we remand to the trial court for another sentencing hearing.

## CONCLUSION

In summary, we conclude that the evidence was sufficient to support the conviction for aggravated robbery. We further conclude that the trial court did not err in refusing to allow defense counsel to quote Attorney General Reno's statement regarding eyewitness identification during cross-examination and closing arguments. However, because the missing exhibits are essential to the sentencing issue, we remand the case to the trial court for a new sentencing hearing.

_____
JOE G. RILEY, JUDGE