KING *v.* STATE.

(*Knoxville*, September Term, 1948.)

Opinion filed December 11, 1948.

432

John R. Todd, Jr., of Kingsport, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice Gailor delivered the opinion of the Court.

Defendant appeals from conviction of incest and sentence to six years imprisonment in the penitentiary for the offense.

Prior to his trial, defendant confessed his guilt, but on the trial undertook to repudiate the confession, alleging that it had been coerced and that he was sick and confused and did not fully realize what he was doing when he signed the confession. However, no formal objection was made to the admission of the confession and it was clearly for the jury to decide what weight it should have under all the circumstances.

The accomplice (*Shelly* v. *State*, 95 Tenn. 152, 31 S. W. 492, 49 Am. St. Rep. 926) of defendant's crime was his 19-year-old daughter, who had lived alone with him for some nine years prior to the birth of an illegitimate baby. While she' was in the local hospital for the delivery of the baby, she made a statement which was reduced to writing, in which she named the defendant as the father of the child and gave details of numerous occasions on which defendant had had sexual intercourse with her. Thereafter, she fled the jurisdiction and lived in Oklahoma with an uncle, until shortly before the trial when she was brought back to Tennessee to testify.

When she took the stand, she was greatly embarrassed and confused. She refused to answer questions of the Attorney General and it was only after the Trial Judge had threatened to send her to jail, that she finally very reluctantly denied all essential elements of the former confession, including her account of her sexual relations with the defendant. She was, however, unable to name anyone else as the father of her child.

Being thus surprised at the repudiation of the confession formerly given, the Attorney General proceeded to impeach the witness whom the State had called and placed upon the stand. In the course of the impeachment, the pre-trial confession which the girl had made at the hospital was introduced at length by cross-examination. The Trial Judge carefully limited the effect to be given the former confession, and expressly held that it was admitted only for the purpose of impeachment, thereby implying that the confession was not to be taken as evidence of the truth of the facts disclosed by it.

The only objection made at the time by defendant's counsel was that the confession was hearsay, not having

been made in defendant's presence. However, one of the grounds for motion for new trial, which is the only one relevant, was as follows:

"The State called and put the King woman on the witness stand, and she testified that the defendant had not had sexual intercourse with her, and she did not know who was the father of the child, *and the State is bound by her testimony under oath.*" (Our emphasis.)

This ground of the motion for a new trial is repeated as the principal assignment of error to support the appeal.

Defendant's argument for reversal may be summarized as follows: That the confession of the defendant standing alone is insufficient to prove the *corpus delicti* and justify the conviction, and that the only corroborating evidence is the confession of the defendant's daughter, which was improperly admitted in evidence.

The exact rule on the limitation of the probative effect of a confession has been stated by a former Chief Justice of this Court as follows:

"The rule upon this subject, as announced by the later authorities, and the great weight of authority, is that, while the *corpus delicti* cannot be established by confessions alone, yet the confessions may be taken in connection with other evidence, direct or circumstantial, corroborating them, and, if from all of the evidence so considered together the *corpus delicti* and the guilt of the person with reference thereto is established beyond a reasonable doubt, it is the duty of the jury to convict." *Ashby* v. *State*, 124 Tenn. 684, 697, 698, 139 S. W. 872, 875.

But aside from the failure to prove the *corpus delicti* if we apply in strictness, the rule announced in *Record* v. *Chickasaw Cooperage Co.*, 108 Tenn. 657, 69 S. W. 334,

the case must be reversed (1) on account of the State's action in impeaching its own witness, and (2) introducing the former statement which contradicted the sworn testimony of the daughter on the witness stand. The State concedes that the conviction cannot stand unless the girl's confession be admitted to support it, and insists that the rule announced in *Record* v. *Cooperage Co.*, *supra*, decided in 1902, which is no more than a quotation from 29 Am. & Eng. Ency. of Law, p. 813, is antiquated and out of accord with the great weight of modern authority. In a scholarly brief the State discusses general authority for this position and cites Wigmore on Evidence, secs. 896 through 899; Jones on Evidence, Vol. 5, pp. 240-241; *Sturgis* v. *State*, 2 Okl. Cr. 362, 102 P. 57.

 Under the peculiar facts of this case, bearing in mind that the defendant and his daughter are *in pari delicto*, but that nevertheless, it was necessary for the State to put the daughter on the stand to establish the guilt of the defendant, we think the correct rule is thus stated:

"The general rule obtains in criminal as well as civil cases, that a party cannot impeach his own witness, but this is subject to the exception that where a party is compelled to call an indispensable witness, or a witness that is hostile taking the party by surprise, such witness may be impeached by the party calling him. This exception is equally applicable to the prosecution, because the state must bring forward all witnesses obtainable, and it would be unfair to the prosecution where it could not contradict an unexpectedly hostile witness. In such case the hostility may be shown by the witness himself or otherwise, and he then may be examined as to his con-

tradictory statements; but the impeachment of one's own witness is limited to those cases where his testimony is in direct contradiction to his prior statements, and he cannot be impeached where he is merely reluctant to give testimony or unless the testimony is actually prejudicial." Wharton's Criminal Evidence, Vol. 1, 10th Ed., sec. 484a, p. 1002.

Numerous cases are cited in the text to support the foregoing statement of law.

 But on the present record, although we follow the foregoing rule and so approve the action of the Attorney General in impeaching the witness and using the former contradictory statement for that purpose, nevertheless, we cannot approve a use of the former confession to corroborate the father's confession, or as evidence of the truth of facts disclosed in the daughter's pre-trial confession. To do so, would be to hold that hearsay evidence not under oath, is to prevail over evidence given by the same witness under oath and on the witness stand. The learned Trial Judge carefully limited the purpose for which the pretrial confession was admissible. . It would have been reversible error for him to leave the contradictory statements of the daughter to the jury to decide whether she was telling the truth at one time or the other. *State* v. *Brunet*, 88 N. J. L. 414, 97 A. 39.

"Where a witness has been impeached by the party calling him by proof of contradictory statements made by him, the effect thereof is only to detract from the weight to be given to his testimony. The statements so proved are not to be considered as evidence of the facts stated." 28 R. C. L., sec. 228, p. 645.

Compare for supporting authority a comprehensive note in 133 A. L. R., p. 1461, where numerous cases are

considered, including *Sturgis* v. *State*, 2 Okl. Cr. 362, 102 P. 57, *supra*.

 Proof that the daughter gave birth to a child and that the child was illegitimate, is no proof of the defendant's paternity. There was no attempt by the State to introduce proof that the girl was isolated in her father's home and that she had no contact or association with other young people, and independently of the daughter's pre-trial confession, there is in the record no corroboration of the defendant's confession. Therefore, it results that although we are convinced of the defendant's guilt of this abnormal and revolting crime, this conviction was obtained by unlawful means. "Odious individuals" are not governed by one law and the rest of the citizens by another. But all are protected by the general law of the land. *Vanzant* v. *Waddel*, 10 Tenn. 260, 270; *Wally's Heirs* v. *Kennedy*, 10 Tenn. 554, 24 Am. Dec. 511. Since we find in the record no admissible corroboration of the defendant's confession, we must under the rule made in *Ashby* v. *State*, *supra*, reluctantly reverse the judgment and remand the case.

All concur.