STATE of Tennessee, Appellee,

v.

**Calvin James SCOTT, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Sept. 24, 1981.

Wendell L. Hartzog, Asst. Public Defender, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, Leland M. McNabb and Thomas F. Jackson, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

DWYER, Judge.

Six issues have been presented in this appeal as of right from a conviction of murder in the second degree with punishment for twenty-five years.

There is an evidence issue which prompts our recitation of the facts from our review of the record.

Allen Joe, Chinese owner of Joe's Supermarket located at 2209 Eldridge in the City of Memphis, was robbed and shot in his place of business around 1:00 p. m. on January 10, 1979. He succumbed the same day from the gunshot wound which had penetrated his abdominal cavity.

The ensuing investigation resulted in the officers interviewing appellant around 8:30 p. m. on the evening of July 30, 1979. After being given his rights the appellant gave the officers a statement inculpating others in the robbery and homicide including a Jimmy Lee Hunter. He also told them the whereabouts of the pistol that was used in the felony-murder. Acting on this information the officers went to 1463 Brookins [1] in Memphis where in executing a search warrant they found a dismantled .22 caliber revolver. The officers also searched a late model Chevrolet Camaro at the residence and found therein another .22 caliber revolver.

A firearms expert for the State testified the fatal projectile could have been fired from either revolver.

The officers, continuing their investigation, interviewed a Ms. Kathy Horton, appellant's girl friend, at police headquarters.[2] After discovering that the police had talked to Ms. Horton, the appellant went to police headquarters and expressed to the officers his displeasure with their actions. The appellant was at that time arrested and later made a statement which inculpated himself in the holdup-murder.

A lineup the following morning, August 1, 1979, resulted in a Ms. Graham, who was inside the grocery at the time of the robbery, identifying appellant as one of the two masked men that robbed and shot Allen Joe on January 10, 1979. Ms. Graham based her identification of appellant on his size, complexion, weight, and voice.[3]

A Jimmy Lee Hunter, called as a witness by the State, related he had pled guilty to his part in the holdup and received a twenty-year sentence. Before the holdup, he checked the store and waited in the car until the holdup was consummated. He then went to a house where he received five dollars for his services while two other men split the rest. He further acknowledged seeing Bernice Perry and Martha Wilson before the holdup.

A Ms. Bernice Perry, testifying for the State, related she and Martha Wilson had met Hunter shortly before the holdup. They also saw the appellant and Harvey Holmes. Hunter accompanied the women into the grocery store. Later, she and Martha Wilson were standing at a bus stop across from the store when Ms. Wilson stated, "... look Calvin and Harvey almost just got hit running across the street." She further related Ms. Graham came running out of the store saying, "... Mr. Allen Joe had just got robbed and that they shot him." The statements of Wilson by Ms. Perry were entered into evidence over objection.

When State witness Martha Wilson became obtrusive the court, over objection, allowed the State to cross examine her as a hostile witness. She admitted giving a statement to the police on August 1, 1979, that she saw the appellant and Harvey Holmes enter the store with ski masks and depart running in front of cars, pulling the masks off. She had also told the police that the appellant admitted that he and Harvey Holmes had robbed the store. After her testimony, the trial court promptly charged the jury that the prior out-of-court statements were admitted only for the purpose of impeaching the credibility of the witness and not as substantive evidence.

The appellant did not testify and offered no proof.

1. Jimmy Lee Hunter was living at this address with the Holmes family on the day of the robbery.

2. In appellant's initial statement, Ms. Horton was with him at his apartment prior to the robbery.

3. During the holdup one of the robbers had said, "Bitch, get on the floor."

■ The jury's verdict of guilty has resolved all conflicts and discrepancies in the testimony of the witnesses and on appeal the evidence is reviewed in the strongest legitimate light to the theory of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). The evidence as narrated is sufficient to convince any rational trier of fact of the appellant's guilt beyond a reasonable doubt. T.R.A.P. 13(e). The evidence issue is overruled.

■ The appellant insists the trial court erred in allowing into evidence over objection Bernice Perry's testimony that Martha Wilson had stated, "Look Calvin and Henry almost got hit running across the street." It is his argument that the State failed to prove that Ms. Wilson's statement was an excited utterance and therefore an exception to the hearsay rule and admissible evidence.

Prior to the trial court's determination that Martha Wilson was a hostile witness, her testimony revealed that she and Ms. Perry were standing at a bus stop within sight of the grocery store when she saw Calvin run across the street. We find no prejudice here. See *Larry Ray Lloyd v. State*, released at Jackson July 10, 1980.

■ The appellant contends the court erred in allowing the State to impeach its witness Martha Wilson. At trial, the witness repudiated her statement to the police on August 1, 1979, in which she had told them she saw appellant enter Joe's store with a ski mask and had heard him admit his participation in the robbery. During a jury-out hearing appellant's counsel submitted that the State could not claim surprise or hostility because appellant's counsel took a statement on May 5, 1980, that was consistent with her trial court testimony, and this statement was furnished to the State. The State countered by pointing out that this statement was not provided to them until June 16, 1980, the day of the trial and offered proof that on May 19, 1980, the State interviewed Ms. Wilson at which time she reaffirmed her original statement of August 1, 1979.

The trial court under these circumstances did not abuse its discretion in allowing the impeachment. *Wallace v. Knoxville Community Development Corporation*, 568 S.W.2d 107, 111 (Tenn.App.1978). Further, after direct examination of Ms. Wilson the trial court properly charged the jury that they were to receive the out-of-court statement of the witness only as reflecting on the credibility of the witness and not as being substantive evidence. There is no error here. *King v. State*, 187 Tenn. 431, 436, 215 S.W.2d 813 (1948). Also see *Martin v. State*, 584 S.W.2d 830, 833 (Tenn.Cr.App. 1979). This issue is overruled.

■ Next, appellant submits that the trial court erred in granting the State's challenge for cause when a juror who at first stated she was against capital punishment and would not invoke it later related she would follow the law. With no citation to authorities, this issue is without merit, T.R. A.P. 27(a)(7); *Rockett v. State*, 475 S.W.2d 561, 563 (Tenn.Cr.App.1971), and is overruled.

■ Appellant complained that the trial court erred in allowing into evidence a photograph which showed the deceased with members of his family. With no citation to authorities, this issue is meritless. T.R.A.P. 27(a)(7). Moreover, the photograph showed Allen Joe to be a reasonable creature in being and was therefore relevant, *State v. Banks*, 564 S.W.2d 947 (Tenn.1978). This issue is overruled.

■ As his last issue, appellant alleges a *Miranda* violation and submits that the trial court erred in admitting into evidence his out-of-court statement. A full hearing was had on appellant's pre-trial motion to suppress his inculpating statement. The investigating officers testified that the appellant had been advised of his *Miranda* rights on July 30, 1979, when he gave a non-inculpating statement to the officers. The appellant on his own volition returned to the police station around 10:30 p. m. on July 31, 1979, and sought out Officer Hunt to inquire why he had interrogated his girl friend Kathy Horton. After being in-

formed by the chief investigative office that they had probable cause to arrest, Officer Hunt arrested the appellant and again advised him of his *Miranda* rights. The appellant informed the officer that he did not wish to make a statement and wanted to call his grandfather. After doing so the appellant informed the officer he wanted to talk to a lawyer. The officer then related he terminated the questioning and was taking appellant to the lockup when Kathy Horton approached and asked to talk to appellant. The officer heard her informing appellant he should tell the truth. After allowing them to converse in private the officer returned and asked appellant if he wanted to talk about it or go ahead to the detention area. The appellant then told the officer he would make a statement. He was again readvised of his rights and admitted his participation in the holdup.

The defense proof included the testimony of Ms. Horton that the appellant was beaten and coerced into confessing.

The trial court in the role as the trier of fact resolved the credibility issue in favor of the State and found from the evidence that the officer had scrupulously observed appellant's right to counsel. The court further found that Ms. Horton was not an agent of the State. The evidence supports the trial court's overruling the motion to suppress. *Pyburn v. State*, 539 S.W.2d 835, 840 (Tenn. Cr.App.1976). Ms. Horton's actions in prevailing on the appellant to tell the truth is not attributable to the State. See *Freshwater v. State*, 2 Tenn.Cr.App. 314, 453 S.W.2d 446 (1969).

We are also mindful of appellant's reliance on *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which holds that once a defendant has expressed his desire for counsel further interrogation must cease until counsel has been made available. While this is true, there is an exception noted in that authority which says, "... unless the accused himself initiates further communication, exchanges or conversations with the police."

■ In determining who initiated the conversation which led to the subsequent inculpatory statement by the appellant, we are cognizant of the fact that the officer ceased his interrogation when the appellant requested an attorney and was in the process of taking him to the detention area when Ms. Horton requested permission to talk to the appellant. During this time she told him to tell the truth. She was also allowed to talk to the appellant in private. The police officer returned and in a routine fashion asked the appellant what he wanted to do. These facts cannot be equated with a resumption of the interrogation as condemned by *Edwards v. Arizona, supra.* Moreover, in considering the "totality of the circumstances," *Fare v. Michael*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), we are of the opinion that the appellant's confession was of his own volition after knowingly and intelligently waiving his right to counsel. This issue is overruled.

The judgment of the trial court is affirmed.

TATUM and DUNCAN, JJ., concur.