**STATE of Tennessee, Appellee,**

v.

**Randy JOHNSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 16, 1984.

Permission to Appeal Denied by Supreme Court Jan. 28, 1985.

Howard L. Upchurch, Pikeville, for appellant.

W.J. Michael Cody, Atty. Gen., Kevin Steiling, Asst. Atty. Gen., Nashville, J. William Pope, Dist. Atty. Gen., Pikeville, L. Michael Caputo, Asst. Dist. Atty. Gen., Jasper, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Randy Johnson, was convicted of simple robbery and was sentenced to the Department of Corrections as a Range I standard offender for ten (10) years. The trial court ordered this sentence to be served consecutively to other sentences which had been imposed upon the defendant for prior convictions. A codefendant, Michael Johnson, was also convicted but he is not a party to this appeal. Another codefendant, Mitchell S. Berry, had previously pled guilty, and he was called as a State's witness in this case. Also, another codefendant, Elvert Hendon, was granted a severance and he testified as a State's witness.

In this appeal, the defendant, Randy Johnson, says the trial court erred in denying certain of his motions, and also contests certain other rulings made by the trial court during the trial. We find no merit to his issues.

■ First, we will consider the defendant's contention that the trial court erred in denying his motion for judgment of acquittal, made at the close of the State's proof. We note that the defendant rested at the end of the State's proof.

The State's evidence showed that on the night of August 17, 1982, at approximately 9:50 p.m., Nell Creasman, an employee of a Stop and Go Shop, was robbed by Mitchell Berry of the sum of approximately one hundred ninety-five dollars ($195). Berry was armed with a shotgun. The police arrived on the scene a few minutes after the robbery, saw a car leaving the area at a high rate of speed, and then pursued and stopped the vehicle. Michael Johnson was the driver of the car, the defendant was riding on the passenger side, and Elvert Hendon was in the back seat.

The defendant and his companions were taken to the police station, where the defendant gave a statement to the effect that he, Berry and Hendon were at Hendon's house earlier in the day at which time Berry said "he needed some money and that he was going to rob something." Berry had a shotgun and all of them got into the car. The defendant said he told Berry "they'd better not rob that place" as he knew the woman (Ms. Creasman), but that Berry got out of the car and had the shotgun with him. The defendant also stated to the police that he and his companions saw Berry "running down the road and we saw the police car coming and told Scott [Berry] to keep running and the law stopped us."

Other evidence showed that the victim, Ms. Creasman, recognized Berry as the robber when he returned to the store. She called the police and Berry was arrested.

Mary Creasman, the daughter of the victim, had dated the defendant. She saw the defendant at his house on the day of the robbery. Hendon and Berry were there also. She saw a shotgun at the defendant's residence. The defendant picked it up and put it in the bedroom.

Sheriff Avery Hickey went to the location where the vehicle had been stopped. He asked the defendant what had happened, and the defendant said "Berry got out of the car with a shotgun."

Elvert Hendon, a codefendant, whose case had been severed, testified for the

State. He said that when he, Michael Johnson, Berry and the defendant approached the store in their vehicle, the defendant told Berry that "the old lady was blind ... and would be easy to hit." Berry had the shotgun as he left the car, and Berry told Michael Johnson to pick him up around the corner from the store after he committed the robbery. Hendon further testified that when their car reached the corner, they saw the police, and that as Berry left the store and approached the car, the defendant signaled to Berry with his hands "to get back."

On cross-examination, Hendon admitted that he had previously told defense attorney Howard Upchurch that the defendant had nothing to do with the robbery. According to Hendon he said this because he was scared.

Hendon's testimony clearly implicates the defendant in this robbery as an aider and abettor. His testimony is amply corroborated by the defendant's own admissions to the police and by the other direct and circumstantial evidence. In fact, the evidence, apart from Hendon's testimony, was sufficient to warrant the jury's verdict finding the defendant guilty beyond a reasonable doubt.

Unquestionably, the State's proof meets the evidentiary tests as required by T.R.A.P. 13(e) and *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

We find that the trial court correctly overruled the defendant's motion for judgment of acquittal.

■ Next, the defendant contends that the trial court should have dismissed the indictment because he was not arraigned until five (5) days before trial.

Tenn.R.Crim.P. 10 states that before a person is tried, he shall be called into open court and arraigned. The rule mentions no time period between arraignment before trial. We find that the defendant was properly arraigned. Furthermore, we point out that the defendant was indicted on December 13, 1982, and was not tried until October 26, 1983. The Honorable Howard Upchurch was appointed to represent him on January 19, 1983. Thus, his attorney had several months prior to trial to prepare his defense and to file any desired motions.

We find that the trial court properly denied the defendant's motion to dismiss the indictment.

Another contention by the defendant is that the trial court should have sustained his counsel's motion to be permitted to withdraw from the case.

■ Prior to trial, Elvert Hendon had told Attorney Upchurch that the defendant had nothing to do with the case. Consequently, at the outset of the trial, when Mr. Upchurch learned Hendon would be a witness for the State, he made a motion to withdraw so he could be available to testify if Hendon testified contrary to his prior statement.

In denying defense counsel's request to withdraw, the trial court indicated it could not delay the proceedings on mere possibilities of what might occur in the trial. Obviously, the motion was premature at that time.

An attorney should withdraw from the trial of a case where he foresees before trial that he will be a witness. Rules of the Supreme Court, Rule 8, D.R. 5–101(B), D.R. 5–102, Canon 5, Code of Professional Responsibility. However, our Court has held that when the need for an attorney to testify is brought about by testimony of other witnesses during trial, then his competency to testify is discretionary with the trial court. *Bowman v. State,* 598 S.W.2d 809 (Tenn.Cr.App.1980).

The defendant appears to argue that the trial court would not permit his attorney to testify. Some discussion was had about this matter after Hendon testified, but the record is unclear as to this matter, and we do not find in the record any express request by defense counsel that he be permitted to testify and no express ruling by the trial court that he could not testify. At any rate, the record shows that Hendon

admitted before the jury the inconsistency between his trial testimony and his prior statement to Mr. Upchurch. In view of this admission by Hendon, there remained no basis for any impeachment testimony.

From all of the above, we find that the trial court did not err in declining Mr. Upchurch's motion to withdraw.

■ Additionally, we find that the trial court properly ruled that Elvert Hendon was competent to testify.

While the record showed that Hendon had received some treatment for mental deficiencies and was mentally retarded to some degree, the trial court determined that the witness understood the nature of an oath and was otherwise sufficiently competent to testify. The record supports the trial court's ruling. The trial court did not abuse its discretion in permitting Hendon to testify. *Surcey v. State*, 4 Tenn.Cr. App. 542, 474 S.W.2d 167 (1971).

Next, the defendant says the trial court erred in allowing the State to cross-examine Mitchell Scott Berry as a hostile witness.

Berry had given a statement to two (2) police officers in which he incriminated the defendant in the robbery. The State called Berry as a witness, and before the jury, he testified that he committed the robbery by himself; that no one was with him; and that he was the one who planned the robbery.

Thereafter, at a jury-out hearing, Berry admitted that he had given a statement to the police but denied that he had told them anything that incriminated the defendant. Berry further testified that he had told representatives from the district attorney general's office a few days before the trial that he would not testify, but acknowledged that he did not tell them that he would repudiate his prior statement.

The trial court ruled that the State could cross-examine Berry before the jury on the inconsistencies between his trial testimony and his former statement. Subsequently, before the jury, the State cross-examined Berry on several facets of his prior statement regarding what he had told the police about the defendant's participation in the robbery, and he denied that he had told the police anything that implicated the defendant.

■ The general rule is that when a party calls a witness who turns hostile, such party may impeach the witness, if the witness is indispensible or takes the party by surprise. *Montesi v. State*, 220 Tenn. 354, 417 S.W.2d 554 (1967); *King v. State*, 187 Tenn. 431, 215 S.W.2d 813 (1948); *State v. Marlow*, 665 S.W.2d 410 (Tenn.Cr. App.1983). The hostility of the witness may be shown through questioning the witness or by other circumstances. *Wilson v. Tranbarger*, 218 Tenn. 208, 402 S.W.2d 449 (1965).

■ Further, the rule is that impeachment of one's own witness is limited to those cases *"where his testimony is direct contradiction to his prior statements,* and he cannot be impeached where he is merely reluctant to give testimony *or unless the testimony is actually prejudicial."* (emphasis added). *King v. State, supra,* 187 Tenn. at 436, 215 S.W.2d 813; *Mays v. State*, 495 S.W.2d 833, at 836–37 (Tenn.Cr. App.1972).

■ The defendant argues that the State was not taken by surprise in this case because Berry had told the State's representatives prior to trial that he would not testify. However, we note that Berry acknowledged at the jury-out hearing that he did not tell the State's representatives that he would repudiate his prior statement that the defendant was a participant in the robbery.

Thus, while the State was aware that Berry was reluctant to appear as a witness, it had no advance warning that Berry, if required to appear, would repudiate his prior statement. Obviously, when Berry was called, he was certainly not reluctant to testify because as soon as he took the stand before the jury, he immediately gave testimony that he was the only participant in the crime and that the defendant had nothing to do with it, all such testimony

being totally inconsistent with his prior statement and being highly prejudicial to the State.

Therefore, under all of the foregoing circumstances, we hold that the trial court did not abuse its discretion in allowing the State to cross-examine Berry regarding the inconsistencies between his trial testimony and his prior statement.

Also, the defendant complains about the admission into evidence of his statement to Sheriff Avery Hickey. When the sheriff appeared at the scene where the suspect car had been·stopped, he asked the defendant what had happened. The defendant responded by saying that Berry had gotten out of the car with a shotgun.

 Responses to general on-the-scene questioning by an officer during the fact finding process as to facts surrounding a crime are admissible in evidence. *Braziel v. State*, 529 S.W.2d 501 (Tenn.Cr.App. 1975); *Gordon v. State*, 478 S.W.2d 911 (Tenn.Cr.App.1971). Furthermore, we point out that after the defendant was taken into custody, and after receiving his *Miranda* warnings, the defendant made the same statement to T.B.I. Agent Bill Barbrow.

We hold Sheriff Avery's testimony about this isolated statement by the defendant was properly admitted into evidence.

Finally, we find that the trial court did not err in permitting the State to recall Sheriff Hickey after previously tendering him as a witness.

 The recall of a witness to testify a second time is within the discretion of the trial judge. *Lillard v. State*, 528 S.W.2d 207 (Tenn.Cr.App.1975).

 Part of Sheriff Hickey's initial testimony precipitated a hearing out of the presence of the jury. Later the witness was recalled to testify further before the jury.

We find no abuse of discretion on the part of the trial court in allowing Sheriff Hickey's further testimony.

We find no reversible errors in this record. The judgment of the trial court is affirmed.

TATUM and CORNELIUS, JJ., concur.