# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 18, 2014 Session

## STATE OF TENNESSEE v. JOSHUA TYRELL CROSS

**Direct Appeal from the Criminal Court for Scott County**
**No. 2012-CR-10178     E. Shayne Sexton, Judge**

---

**No. E2014-00963-CCA-R3-CD - Filed February 4, 2015**

---

The Defendant, Joshua Tyrell Cross, pleaded guilty to attempted rape, and the trial court sentenced him to thirty-one days of time served followed by eight years of probation. The Defendant filed a motion to withdraw his guilty plea, which the trial court denied after a hearing. On appeal, the Defendant contends that: (1) his judgment is void because the information charging him with attempted rape failed to allege each of the required elements of the offense; (2) the factual basis submitted in support of the Defendant's conviction is insufficient because it did not contain the required culpable mental state; (3) his judgment of conviction should be reversed because there is no record that he was arraigned or that he waived arraignment; and (4) the trial court erred when it denied his motion to withdraw his guilty plea and remand the case for a preliminary hearing. After a thorough review of the record and applicable authorities, we reverse the trial court's judgment and remand the case for a preliminary hearing on the original charges.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

David A. Stuart, Clinton, Tennessee (on appeal), and Dale Potter, LaFollette, Tennessee (at hearing), for the Appellant, Joshua Tyrell Cross.

Herbert H. Slatery, III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Jared Effler, District Attorney General; and Thomas E. Barclay, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

# I. Facts

This case arises from events that occurred on or about July 2, 2012, for which the Oneida Police Department arrested the Defendant, Joshua Tyrell Cross, on August 4, 2012, and charged him with aggravated rape. The Defendant had his initial appearance before the trial court on August 6, 2012, when the Public Defender's Office was appointed to represent him.

On September 4, 2012, a "Criminal Information" was filed, charging the Defendant with attempted rape. The Information alleged that the Defendant "on or about July 2, 2012, . . . did feloniously and knowingly attempt to sexually penetrate S.S.[1] without her consent and knowing or having reason to know at the time of the penetration that she did not consent." Attached to the Information were an arrest warrant and criminal summons, an affidavit of complaint, and an order granting bail. The affidavit of complaint stated:

> On 7-1-12 defendant, Cody Best, Lance Burchfield, [S.S.] and three minor children spent the evening at the river. By all accounts, [the Defendant], Cody, Lance and [S.S.] were all drinking. At some point in the early morning hours of 7-2-12, [S.S.] returned home but left one minor male child with Lance. Lance, Cody, [the Defendant] and minor male child remained at Cody's garage and were supposed to get a ride home later from [the Defendant]. According to witnesses, [the Defendant] left without saying a word to anyone leaving Cody, Lance and the male child stranded as Cody's garage is not attached to his house and his wife had taken his keys. [S.S.'s] daughter was up watching tv. She stated she heard a noise and looked out her door. She saw a man standing in the living room with what appeared to be a beer in his hand. He told her it was Josh from the river. He then asked her where her dad (Lance) was. She stated he then asked where her mom was. She told him she didn't know. Female juvenile stated she saw [the Defendant] opening doors and looking in. She stated he then went to the door and told her he was leaving. She said ok and went back to bed. [S.S.] stated she was in her room asleep with her 2 year old baby girl. [S.S.] remembers waking up to [the Defendant] on top of her. [S.S.] indicated that there was sexual penetration. The next morning when she awoke, she was completely naked and she had an injury to the right side of her face. [S.S.] did seek treatment for her injuries and a rape kit was done on 7-3-12.

---

[1] In keeping with the policy of this Court, we will refer to the victim by her initials only.

Also attached to the Information was a waiver of indictment or presentment. The waiver was signed by the Defendant's attorney and the Defendant.

On September 4, 2012, the trial court held a hearing during which it heard evidence related to the Defendant's plea of guilty to the charge of attempted rape. The trial court informed the Defendant that the Scott County grand jury had not heard the case against the Defendant. Further, the trial court stated that, by pleading guilty by Information, he was waiving his right to have the Scott County grand jury hear the evidence against him. The trial court informed the Defendant that he was pleading guilty to a Class C felony, punishable by up to fifteen years in prison and a fine of $10,000. The Defendant acknowledged his understanding of this fact.

The trial court went on to inform the Defendant of his rights and ensure the Defendant's understanding of those rights. The trial court informed the Defendant he had the right to plead not guilty and to have his case tried by a jury or a judge. The Defendant responded that he understood. The trial court informed the Defendant he had the right to testify or not testify on his own behalf and that his silence could not be used against him. The trial court further stated that the Defendant had the right to call witnesses and appeal any verdict. The Defendant acknowledged his rights. The trial court stated, "By coming in today and by going through this process, you're giving up all these rights." The Defendant responded, "Yes, sir."

The trial court asked the Defendant if he understood that his conviction could be used against him in the future, that he would lose his right to vote and run for public office, and that his conviction could be used to impeach any future sworn testimony. The Defendant stated he understood.

The Defendant informed the trial court that he was twenty-four, had a high school education, and could read and write. The Defendant said he was not under the influence of drugs or alcohol, that he had not taken any medication that caused his lack of understanding of the proceedings, and that he had not been forced or threatened with regard to his decision to enter a guilty plea. The Defendant said that no one had made him any promises and that he was there of his own free will. The trial court informed the Defendant that, while there may be recommendations as to the punishment in his case, the trial court was not bound to follow the recommendations. The Defendant expressed his satisfaction with his attorney's representation.

The State then offered the following facts supporting the guilty plea as follows:

The parties would stipulate that [the Defendant], on or about July 2nd, 2012, in Scott County, Tennessee, did unlawfully and feloniously attempt to sexually penetrate [S.S.] without her consent, and knowing or having reason to know at the time that she did not consent.

The trial court found:

Based on [the State's articulation of the facts], the Court will find you guilty and impose the recommended punishment: Three years, range one. In addition to the punishment provided herein, . . . you are subject to supervision for life pursuant to State statute. Split confinement of thirty-one (31) days with credit from August the 4th through today, probation supervised by Tennessee Department of Corrections for an eight-year period beginning today.

The trial court also ordered that the Defendant not have contact with the victim or her children. The Defendant acknowledged his understanding and said he did not have any questions.

On September 11, 2012, the Defendant filed a motion to withdraw his guilty plea and to remand his case for a preliminary hearing. In the motion, the Defendant asserted that he had asked that his mother be allowed to consult with him regarding the plea recommendation but that his attorney prevented her from being present. He stated that he worked for the Commonwealth of Kentucky and had specifically asked if he would be allowed to travel from Tennessee to his place of employment and that his attorney had assured him that he would be so allowed. His attorney, he stated, told him that he would only have to report once per month until his court costs were paid and then he would be placed on unsupervised probation. The Defendant stated that his attorney told him that "probation for sexual offenders was no big deal and that it would not present him with any serious difficulty or inconvenience." The Defendant stated that his attorney further told him that he would be removed from the sexual offender registry after ten years.

The Defendant asserted in his motion that the primary issue in this case was whether the sexual intercourse in this case was consensual. He asserted that it was consensual. The Defendant stated that, when he first reported to his probation officer, he learned that his attorney's representations to him were not accurate. He asserted that this entitled him to withdraw his guilty plea. He further asserted that his attorney's encouraging him to waive his preliminary hearing also constituted ineffective assistance of counsel. The motion stated that he should be allowed to withdraw his guilty plea pursuant to Tennessee Rule of Criminal Procedure 32(f)(1).

On October 22, 2012, the trial court held a hearing on the motion to withdraw the guilty plea. At the hearing, the Defendant testified that he was incarcerated on these charges and did not make bond. The Defendant said that he came to General Sessions Court at some point for a preliminary hearing. At that hearing, his court appointed attorney advised him to waive his right to a preliminary hearing and to enter into a plea agreement with the State. The Defendant testified that his attorney did not inform him that he would also be waiving his right to a grand jury.

The Defendant said that his mother was present the day of his preliminary hearing. He asked that he be allowed to confer with her to decide whether to enter a guilty plea. He said that he was not allowed to do so. The Defendant said that he explained to his attorney ("Counsel") that he worked in the State of Kentucky. Counsel informed him that he would be allowed to travel between Tennessee and Kentucky for work. The Defendant said that after he entered his guilty plea he learned that he could not travel back and forth because of the requirement that he register as a sex offender. He said that he would be required to register in Kentucky every time he traveled there for work. He said that he would need a permit from his probation officer to work in Kentucky and that he was unsure if he would be able to obtain such a permit. He said he was further concerned because his scheduled classes for counseling, anger management, and sex offender group also made it difficult for him to work in Kentucky.

The Defendant testified that Counsel told him that he would have to report to his probation officer once a month for a set number of years and then his probation would "drop to unsupervised." He said he had since learned that it was supervised probation and that he would have to report twice per month for the entire eight years. He also learned that he would be on the sexual offender registry for life. The Defendant said Counsel told him that the conditions required of an offender on probation as a sex offender were "no big deal" when compared with the requirements of regular probation. He said Counsel also told him that he could get off the sex offender registry in ten or fifteen years. He later learned that he would be required to register as a sexual offender for the duration of his life.

The Defendant said that, had he gone to trial, he was facing a potential sentence of twenty years, to be served at 100%. He stated that the sexual intercourse that occurred between he and S.S. was consensual on her part, a fact he discussed with Counsel.

The Defendant said that, when he reported to his probation officer after the guilty plea, she informed him of all of the requirements of his probation. He said she could tell that he was not aware of these requirements, so she asked if his attorney had explained them to him. When he said "no," she informed him that he had thirty days to "recant" his guilty plea and that he needed to obtain an attorney.

-5-

The Defendant testified that Counsel did not inform him that he would be prohibited from having any access to computers or the internet and that he would have to take a polygraph examination. The Defendant stated that Counsel did not tell him that he would have to have a psychological evaluation and that he would have to attend weekly group therapy sessions as a sex offender. The Defendant said that, had he known of all of the probationary requirements, he would not have entered his guilty plea.

The Defendant testified that he did not discuss waiver of a preliminary hearing with the General Sessions judge. He said that he signed a piece of paper waiving the hearing but that the nature of the preliminary hearing was never explained to him. Further, he never read the form he signed waiving his rights, and no one read it to him.

The Defendant said that the victim waited several hours before she reported the alleged offense. Further, she had made inconsistent statements about the circumstances of the offense. The Defendant said he was not guilty of rape or attempted rape. He said he was scared, nervous, and not thinking clearly when he entered his plea. He said he had not been given a complete understanding of the consequences of his guilty plea. The trial court never discussed with him the nature of the sex offender supervised probation. The Defendant said Counsel never told him that he would be subject to community supervision for life.

During cross-examination, the Defendant testified that he had pleaded guilty on September 21, 2011, to driving under the influence. He also pleaded guilty to driving on a revoked license on December 7, 2011. The Defendant recalled that, during the guilty plea hearing in this case, the trial court informed him that he had a right to an indictment by a grand jury. The Defendant said it was not his idea to take the plea. Counsel told him that if he took the plea he could get back to work. He agreed that the State's offer resolved the charges against him and also his violation of probation. The Defendant agreed that he was upset about the terms of his probation because he did not understand what some of the requirements of his probation were going to be. The Defendant said that Counsel had not reviewed with him the requirements of his probation. The Defendant said he did not understand that he was going to be on community supervision for life. He said that he did sign the document stating as much but that he did not read the document until after he had pleaded guilty.

The Defendant agreed that he had not yet tried to register for community supervision for life in Kentucky and that he had not yet been denied a travel permit to work in Kentucky. The Defendant maintained that Counsel told him that he would be on supervised probation for a set number of years and that his probation would then be converted to unsupervised. The Defendant said that the only probation requirement he understood was that he was going to have to put a driver's license code on his driver's license.

-6-

The Defendant said that he understood that if he took the case to trial that he had a chance of being convicted and serving his sentence at 100 percent. He agreed that there were other witnesses who could "somewhat corroborate" the victim's statements. The Defendant agreed that he told the trial court that he was pleading guilty because he was, in fact, guilty.

Counsel testified that he was the assistant public defender appointed to represent the Defendant. Counsel said that the Defendant did not have a bond hearing in General Sessions court because he was facing a charge of aggravated rape and also violating a probation sentence. The parties had discussed a plea agreement, and Counsel planned to file a motion to set bond after the preliminary hearing.

Counsel recounted the preliminary hearing discussions. He said that the State initially offered a three-year sentence, six months on split confinement, and Counsel brought that offer to the Defendant. The Defendant said he wanted to be released from jail with time served. Counsel did not recall whether the Defendant asked to speak with his mother. Counsel said that he did not allow clients to discuss plea offers with outside people.

Counsel testified that he had never interviewed the victim. He also did not interview the two children that were present at the time the offense allegedly occurred. He recalled that one of the children was too young to be interviewed. He said that the other child was also "fairly young." Counsel explained that it was not his practice to interview the witnesses before the preliminary hearing.

Counsel testified that he did not interview the victim's ex-husband who still resided at the victim's home. He also did not interview Cody Best, who was a witness. He said that he called Mr. Best on several occasions, and Mr. Best returned his call, but the two played "phone tag[]" and "kept missing each other." Mr. Best was present in court. Counsel said that he did not interview any other witnesses before the preliminary hearing. He said that it was his intent to rely on the State to put on the witnesses at the preliminary hearing level.

Counsel agreed that the trial court asked him during the guilty plea submission hearing whether he had interviewed the witnesses and would be ready for trial if the Defendant chose to plead not guilty. Counsel said he informed the trial court he had done so. He explained that, while he would not have been ready for trial the day of the guilty plea submission hearing, he knew what the anticipated testimony would have been and he would have interviewed the witnesses before trial.

Counsel said that he believed that the Defendant had a high school education and could read and write. He did not read the Defendant every word of the guilty plea submission form, and he did not see the Defendant reading it to himself. Counsel said he

reviewed with the Defendant the parts of the agreement that applied to him. Counsel noted that the guilty plea submission form stated, "I have read or had read to me the contents of this document." Counsel testified that whether this was a true statement "depend[ed] on how you look at contents." Counsel said his understanding of "contents" is to make sure that his client understood what the document was about and what rights they were giving up.

Counsel explained that he did not allow his clients to discuss whether they were going to plead guilty with anyone else while Counsel was speaking with them. He explained that he preferred to keep their conversations private and privileged in part because people other than his client had their own interests in mind also. Counsel wanted his clients to decide what was best for themselves without outside influences.

Counsel said he was unaware that the Defendant had a job out of state, in Kentucky, that required him to be present for forty-eight hours at a time. Counsel did not recall the Defendant telling him that he worked in Kentucky at all, and he only recalled him saying that he might have to find some other type of employment.

Counsel said that he did not tell the Defendant how often he would have to report. Counsel said that "if [a client] ask[s] me that question, I tell them they've gotta talk to the probation officers because every probation officer handles that different. . . . I've never asked any of the probation officers here how they do it. Some will require them to come in weekly in the beginning and then they go to monthly, so that's the discretion of the probation officer."

Counsel testified that he and the Defendant "may have" had some discussion about when the Defendant could be removed from the sexual offender registry list. Counsel said that, if this did occur, his answer to the Defendant would have been that "it would be ten years after his probation expire[d]." Counsel said that he would have told the Defendant that whether he could be removed from the registry would "depend on what the law [wa]s at that point in time." Counsel conceded that the Defendant was on community supervision for life. He said that "you never know what the law will be when he gets ready to come off probation or later down the road." Counsel said he did not review with the Defendant the community supervision for life form, and the Defendant did not ask him any questions about the form. He said, "[U]nless somebody actually asks me the details of it, I don't go over that TCA code section with them," referring to the code section about community supervision for life.

Based upon this evidence, the trial court denied the motion to withdraw the guilty plea and remand the case for a preliminary hearing. The trial court made no findings of fact and did not state which standard under Tennessee Rule of Criminal Procedure 32(f) it applied in making its ruling.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his motion to withdraw his guilty plea because: (1) such was necessary to correct a manifest injustice; (2) the State failed to allege each of the elements of the offense in the information by which he was charged; (3) the stipulated factual basis for his plea was insufficient to sustain his conviction; and (4) the absence of an entry of record that he was arraigned on the information filed against him necessitated reversal.

## A. Motion to Withdraw Guilty Plea

The withdrawal of a plea of guilt is governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure. This rule states:

> (f) Withdrawal of Guilty Plea.
> (1) Before Sentence Imposed. Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.
> (2) After Sentence But Before judgment Final. After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

Tenn. R. Crim. P. 32(f).

Our Supreme Court has stated:

> Withdrawal to correct manifest injustice is warranted where: (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*State v. Crowe*, 168 S.W.3d 731, 742 (Tenn. 2005). This Court has also held that "[w]here there is a denial of due process, there is a 'manifest injustice' as a matter of law." *State v. Davis*, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991). "Conversely, a trial court will not, as a general rule, permit the withdrawal of a plea of guilty to prevent 'manifest injustice'

when the basis of the relief is predicated upon (a) an accused's change of heart, (b) the entry of the plea to avoid harsher punishment, or (c) an accused's dissatisfaction with the harsh punishment imposed by a trial court or a jury." *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The appellate court is bound to uphold the trial court's determinations regarding the withdrawal of a guilty plea unless the record demonstrates that the trial court abused its discretion. *Id.*; *State v. Drake*, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010). An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion. *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995). This Court will also find an abuse of discretion when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007).

The "manifest injustice" standard "is based 'upon practical considerations important to the proper administration of justice.'" *Crowe*, 168 S.W.3d. at 741 (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963)). While the term "manifest injustice" has not been defined by statutory or case law, courts have identified on a case-by-case basis circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. *See State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). A court may permit the withdrawal of a plea to prevent manifest injustice when the defendant establishes that the plea was not knowingly, voluntarily, or understandingly entered. *Id.* When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The defendant bears the burden of establishing that the plea should be withdrawn. *Turner*, 919 S.W.2d at 353. The determination of whether a plea was entered voluntarily and knowingly is made based on the totality of the circumstances. *Id.*; *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances relevant to a guilty plea include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)).  A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary."  *Id.*

In the case under submission, we conclude that the trial court erred when it denied the Defendant's motion to withdraw his guilty plea.  The Defendant's plea was entered based upon several misunderstandings, which were attributable to Counsel's advice.  Counsel told the Defendant that he would be eligible to come off the sexual offender registry ten years after his probation expired.  During the hearing on the Defendant's motion to withdraw, Counsel acknowledged that the Defendant was on community supervision for life, and he stated that "you never know what the law will be when he gets ready to come off probation or later down the road."  This advice to the Defendant promulgated the Defendant's misunderstanding that he might not be on community supervision for the duration of his life. The fact that the law in the future may change is irrelevant to the Defendant's entry of his plea of guilt and agreement to community supervision for life.  The Defendant was being sentenced to supervision for the duration of his life, a fact that neither Counsel nor the trial court discussed with the Defendant.  In fact, Counsel stated that he knew that the Defendant had not read the community supervision for life form detailing some of those requirements. He further stated that he did not go over the Defendant's supervision requirements with the Defendant because those were ultimately up to the Defendant's probation officer. Community supervision for life, however, has some clear and statutorily mandated requirements of which a defendant must be made aware before entering a plea of guilt and accepting such a sentence.  *See* T.C.A. §§ 40-39-201 to -215; *Ward v. State*, 315 W.W.3d 461 (2010).  The Defendant reported to his probation officer the day after entering his guilty plea and learned of those requirements for the first time.  He then filed the motion at issue in this case.  We conclude that, because neither Counsel nor the trial court informed the Defendant of the community supervision for life requirements and because Counsel knew that the Defendant had not read the form stating those requirements, the Defendant's guilty plea was not voluntary.  It was entered based upon the misunderstanding of his probation requirements, including the fact that he would never be eligible for removal from the sexual offender registry.  As such, we reverse the trial court's denial of the Defendant's motion to withdraw his guilty plea.  We grant that motion, and we remand the case for a preliminary hearing on the original charges.

## B. Sufficiency of the Information

The Defendant next contends that the trial court erred when it denied his motion to withdraw his guilty plea because the State failed to allege each of the elements of the offense in the information by which he was charged.  Based upon this, he asserts, the trial court lacked subject matter jurisdiction to hear his case.  The State posits that the Defendant's

argument is in error because the legislature granted the trial court the power to hear and decide this criminal action. The State further asserts that the trial court had the power to accept the Defendant's guilty plea because the information charging him with these offenses included the essential elements of the offense and provided him with sufficient notice of the crime.

This Court must determine "'whether the trial and appellate court have jurisdiction over the subject matter[.]'" *State v. Perkinson*, 867 S.W.2d 1, 6 (Tenn. Crim. App. 1992) (quoting citing Tenn. R. App. P. 13(b)). An indictment that does not charge an offense deprives the courts of subject matter jurisdiction. *State v. Lindsey*, 208 S.W.3d 432, 438 (Tenn. Crim. App. 2006) ("[T]he rationale is that if the indictment fails to include an essential element of the offense, no crime is charged, and, therefore, no offense is before the court.").

The Tennessee Constitution requires that an indictment, presentment or information state "the nature and cause of the accusation." Tenn. Const. Art. I, § 9. The Supreme Court has said this requirement mandates that the charging instrument "contain a complete description of such facts and circumstances as will constitute the crime." *Tipton v. State*, 160 Tenn. 664, 670, 28 S.W.2d 635, 636 (1930) (citation omitted). To satisfy this constitutional requirement, a charging instrument must include sufficient information to "1) provide notice to the accused of the offense charged; 2) provide the court with an adequate ground upon which a proper judgment may be entered; and 3) provide the defendant with protection against double jeopardy." *Lindsey*, 208 S.W.2d at 438 (quoting *Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn. 2000)); *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). Furthermore, a charging instrument is statutorily required to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to engage a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." T.C.A. § 40-13-202. Challenges to the validity of an indictment, presentment or information present a question of law and are reviewed de novo. *Lindsey*, 208 S.W.3d at 438; *State v. Alvin Brewer and Patrick Boyland*, Nos. W2012-02281-CCA-R3-CD, W2012-02282-CCA-R3-CD2014 WL 1669807, at *27 (Tenn. Crim. App., at Jackson, Apr. 24, 2014), *no. Tenn. R. App. P. 11 application filed*.

"[T]he touchstone for constitutionality is adequate notice to the accused." *State v. Hill*, 954 S.W.2d 725, 729 (Tenn. 1997). At common law, pleading requirements for indictments were strict because the elements of criminal offenses were not easily ascertainable by reference to a statute. *Id*. at 728. In many decisions since *Hill* discussing the sufficiency of indictments, the Tennessee Supreme Court has repeatedly emphasized the relaxation of strict common law pleading requirements. *State v. Hammonds*, 30 S.W.3d 294,

299 (Tenn. 2000). Tennessee courts approach "attacks upon indictments . . . from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding." *Hill*, 954 S.W.2d at 728 (internal citation omitted). Challenges to the legal sufficiency of an indictment present questions of law subject to de novo review on appeal. *State v. Wilson*, 31 S.W.3d 189, 191 (Tenn. 2000).

As charged in this case, the criminal information states:

> [The Defendant] prior to the filing of this information, on or about July 2, 2012, in the County and State aforesaid, did unlawfully, feloniously and knowingly attempt to sexually penetrate [S.S.] without her consent and knowing or having reason to know at the time of the penetration that she did not consent.

The Defendant alleges that this is insufficient because it lacks the requisite mental state, which is that he committed this action intentionally, and because it did not expressly define the term "attempt." The Tennessee Supreme Court in *Hill* addressed the validity of an indictment that failed to specify a culpable mental state. 954 S.W.2d at 728. The Court found that the indictment was valid, finding that to hold otherwise would be counter to common sense. In another case citing *Hill*, the Tennessee Supreme Court stated that "*Hill* clearly held that an indictment need not specify a culpable mental state as long as the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against him which the accused must defend." *Hart v. State*, 21 S.W.3d 901-904 (Tenn. 2000).

The Defendant's brief cites to and recognizes the *Hill* and *Hart* decisions. He distinguishes his case from those holdings by stating that "the absence of an allegation that the attempt must be intentional combined with the absence of any allegations regarding any of the possible varieties of [attempt] appear to cross the line and . . . render the information and judgment [based] thereon void." We cannot agree. Approaching this criminal information from the standpoint of common sense and right reason we conclude that it met the requirements of validity. The information provided notice to the Defendant that he was being charged with attempted rape, stated the facts supporting the allegation, and the name of the victim. The information provided the trial court with an adequate ground upon which a proper judgment may be entered and was specific enough to provide the Defendant with protection against double jeopardy. We conclude that the Defendant is not entitled to relief on this issue.

### C. Sufficiency of Stipulated Facts

-13-

The Defendant next contends that the trial court erred when it denied his motion to withdraw his guilty plea because the facts provided by the State as the "stipulated" facts are insufficient to sustain his conviction. The State counters that the "State's stipulation of facts along with the [D]efendant's oral and written affirmations that he attempted to rape the victim provided the trial court with sufficient evidence to establish the essential elements of the offense." The State provided the facts as follows:

On 7-1-12 defendant, Cody Best, Lance Burchfield, [S.S.] and three minor children spent the evening at the river. By all accounts, defendant, Cody, Lance and [S.S.] were all drinking. At some point in the early morning hours of 7-2-12, [S.S.] returned home but left one minor male child with Lance. Lance, Cody, defendant and minor male child remained at Cody's garage and were supposed to get a ride home later from defendant. According to witnesses, defendant left without saying a word to anyone leaving Cody, Lance and the male child stranded as Cody's garage is not attached to his house and his wife had taken his keys. [S.S.'s] daughter was up watching tv. She stated she heard a noise and looked out her door. She saw a man standing in the living room with what appeared to be a beer in his hand. He told her it was Josh from the river. He then asked her where her dad (Lance) was. She stated he then asked where her mom was. She told him she didn't know. Female juvenile stated she saw defendant opening doors and looking in. She stated he then went to the door and told her he was leaving. She said ok and went back to bed. Victim stated she was in her room asleep with her 2 year old baby girl. She remembers waking up to defendant on top of her. Victim indicated that there was sexual penetration. The next morning when she awoke, she was completely naked and she had an injury to the right side of her face. Victim did seek treatment for her injuries and a rape kit was done on 7-3-12.

In *State v. Lord*, this Court discussed the requirement of a factual basis to support a guilty plea. 894 S.W.2d 312, 316 (Tenn. Crim. App. 1994). In that case, we stated:

First, we note that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Blankenship v. State*, 858 S.W.2d 897, 903 (Tenn. 1993) (quoting from *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed.2d 274 (1969)). Thus, it is the guilty plea, itself, that provides the basis for the conviction. *See*

*McMann v. Richardson*, 397 U.S. 759, 766, 90 S. Ct. 1441, 1446, 25 L.Ed.2d 763 (1970). Given this significant result from the entry of a guilty plea, the focus of the inquiry at a guilty plea hearing is on whether or not the plea is being voluntarily and intelligently made and the procedural requirements provided by [*State v. Mackey*, 553 S.W.2d 317 (Tenn. 1977)] and Rule 11, Tenn. R.Crim. P., insure that the record will show that such a plea occurs.

In this context, the requirement that the record show a factual basis for the plea primarily exists to insure that the defendant's guilty plea is made with his understanding that his admitted conduct actually constitutes the offense with which he is charged or a lesser included one. *See McCarthy v. United States*, 394 U.S. 459, 466-67, 89 S. Ct. 1166, 1171, 22 L. Ed.2d 418 (1969). In other words, the factual basis inquiry focuses upon what the defendant understands about the applicable law in relation to the facts he is admitting. Thus, upon the record showing that a guilty plea is voluntarily and understandingly being made, the guilty plea, by itself, is sufficient to support a conviction.

In this respect, the existence of a factual basis may be shown by numerous sources in the record, whether it be a prosecutor's statement of the evidence, live testimony or otherwise. *See Chamberlain v. State*, 815 S.W.2d 534, 540 (Tenn. Crim. App. 1990); *United States v. Goldberg*, 862 F.2d 101, 105 (6th Cir. 1988); *United States v. Darling*, 766 F.2d 1095, 1100 (7th Cir.), *cert. denied*, 474 U.S. 1024, 106 S. Ct. 579, 88 L. Ed. 2d 561 (1985).

*Id.*

In this case, we conclude that there was sufficient evidence that the Defendant's guilty plea was "made with his understanding that his admitted conduct actually constitutes the offense with which he is charged or a lesser included one." *See McCarthy*, 394 U.S. at 466-67. The State read articulated facts including witnesses' statements and the victim's allegation that there was sexual penetration, that she suffered injury, and that a rape kit was conducted upon her. The State informed the trial court of the stipulated date of the events and of the facts proceeding the alleged rape. As we have previously held, the Defendant

entered his plea on a mistaken understanding of his ability to be removed from the sexual offender registry and without an understanding of the requirements of the sexual offender registry. His plea itself was, therefore, not voluntary, but the factual basis for his plea was sufficient to support the plea itself.

## D. Right to Arraignment

The Defendant contends that the trial court erred when it denied his motion to withdraw his guilty plea because there is no evidence in the record that he was arraigned or that he had been informed of his right to an arraignment and that he waived that right. The State counters that the Defendant is not entitled to relief because the trial court formally informed him of the nature of the charges against him before accepting his plea of guilt.

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The related provision of the Tennessee Constitution states "[t]hat in all criminal prosecutions, the accused hath the right . . . to demand the nature and cause of the accusation against him." Tenn. Const. art. I, § 9. Generally, the protections of the Sixth Amendment attach at arraignment or when a defendant first appears before a judicial officer and is informed of the charge in the complaint and of various rights in further proceedings. *See* 1 Wayne R. LaFave et al., Criminal Procedure § 1.4(g), at 135 (3d ed. 2007); *see also Garland v. Washington*, 232 U.S. 642, 644, 34 S. Ct. 456, 58 L. Ed. 772 (1914) (stating that the purpose of the arraignment is to "inform the accused of the charge against him and obtain an answer from him"); *State v. Sutton*, 761 S.W.2d 763, 769 (Tenn. 1988) ("Arraignment in this state is a proceeding to inform an accused of the charges instituted by the grand jury, to provide him with a copy, and to 'call him to plead.'").

Tennessee Rule of Criminal Procedure Rule 10 governs arraignment. It states:

(a) General. Before any person is tried for the commission of an offense, the person shall be called into open court and arraigned, except as provided in Rule 43.

(b) Procedure. The arraignment shall consist of the following:

(1) ensuring that the defendant has a copy of the indictment, presentment, or information before called upon to plead;

(2) reading the indictment, presentment, or information to the defendant or stating to the defendant the substance of the charge; and then

(3) asking the defendant to plead to the indictment, presentment, or information.

(c) Record. The arraignment shall be entered on the record.

Our Supreme Court has held that an arraignment "may or may not be a critical stage" of the criminal proceedings. *State v. Sutton*, 761 S.W.2d 763, 768 (Tenn. 1988). Rule 10 of the Tennessee Rules of Criminal Procedure provides, in pertinent part, as follows:

The arraignment shall consist of reading the indictment, presentment or information to the defendant or stating to the defendant the substance of the indictment, presentment or information, and calling on him or her to plead thereto. The defendant shall be given a copy of the indictment, presentment or information before called upon to plead. An entry of record shall be made of the arraignment.

Tenn. R. Crim. P. 10(b). When an arraignment is limited to the matters prescribed in the rule, it is not considered a critical stage. *Sutton*, 761 S.W.2d at 769; *see also State v. Street*, 768 S.W.2d 703 (Tenn. Crim. App. 1988) (holding that the arraignment stage may be critical when the defendant waives a constitutional right or makes an incriminating statement). There is no prescribed time period before a defendant's trial or plea of guilt at which the arraignment must take place. *See State v. Johnson*, 685 S.W.2d 301, 304 (Tenn. Crim. App. 1984).

In this case, there is no entry of record showing that the arraignment took place. The only evidence that the Defendant was formally informed of the charges against him occurred during his guilty plea submission hearing when the trial court stated, "Mr. Cross, attempted rape is a "C" felony, three to fifteen-year prison sentence, with a maximum fine of Ten Thousand ($10,000). Do you understand this?" The State read the facts supporting the charge, and the Defendant agreed to those facts. The Defendant was on notice of the charges he faced. He was on notice of the name of the victim, the name of the witnesses, the date of the alleged offense, and the circumstances surrounding the offense. Under these circumstances, we conclude that the State substantially complied with the arraignment requirements. Upon remand, however, we encourage the State and the trial court to formally arraign the Defendant before further proceedings are initiated against him. The Defendant, however, is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we reverse the judgment of the trial court denying the Defendant's motion to withdraw his guilty plea. We grant the Defendant's motion to withdraw his guilty plea, and we remand this case for a preliminary hearing on the original charges.

_____
ROBERT W. WEDEMEYER, JUDGE